2011 WY 121

Marvin Brent RAGETH and Sherri L. Rageth, Appellants (Plaintiffs),

v.

SIDON IRRIGATION DISTRICT, Appellee (Defendant).

Nos. S–10–0141, S–10–0184.

Supreme Court of Wyoming.

Aug. 24, 2011.

Representing Appellant: Kara Brighton and Harriet M. Hageman of Hageman & Brighton, P.C., Cheyenne, Wyoming. Argument by Ms. Brighton.

Representing Appellee: Mary Helen Reed of McCarty, Reed and Earhart, Attorneys at Law, L.C., Cody, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Marvin Brent Rageth and Sherri L. Rageth (Rageths) irrigate 559.75 acres in Big Horn County, Wyoming, under an adjudicated appropriation of 8 cubic feet per second (c.f.s.) from Bitter Creek which is conveyed to their property a distance of 6.5 to 7 miles through the Sidon Canal owned by the Sidon Irrigation District (District) organized and existing under pertinent provisions of Wyo. Stat. Ann. Title 41, Chapter 7 (LexisNexis 2011). Rageths are not members of District, and their irrigated acreage is not located within District's boundaries. District comprises approximately 13,129.98 acres under an adjudicated appropriation of 179.57 c.f.s. from the Shoshone River and a supplemental supply from Bitter Creek.

[¶ 2] Rageths commenced an action against District seeking a declaration of their conveyance rights in the Sidon Canal, reimbursement of water delivery fees paid to District under protest for several past irrigation seasons, and the establishment of a reasonable annual water delivery fee in future years. In time, the parties executed a stipulation, approved by the district court, that Rageths have the perpetual right, as defined by their adjudicated water rights, to divert water from District's Bitter Creek diversion structure and convey such water through the Sidon Canal to their property, subject to an annual payment to District to be determined by subsequent court order, and that Rageths' perpetual conveyance right does not include any ownership interest in District's facilities.

[¶ 3] As for Rageths' remaining claims for reimbursement of past water delivery fees and establishment of a reasonable annual water delivery fee going forward, District moved for summary judgment, which Rageths opposed. Following a hearing on that motion, the district court granted District's motion. Rageths have timely appealed from that order in No. S–10–0141. The district court also entered its order awarding District's costs as the prevailing party, and Rageths have timely appealed from that order in No. S–10–0184. We consolidated these

appeals for decision, and now reverse those orders and remand for further proceedings consistent with this opinion.

## ISSUES

[¶ 4] In No. S–10–0141, the central issue presented is, in the absence of an agreement, what water delivery fee may an irrigation district charge a non-member who has a perpetual right to convey that non-member's adjudicated appropriation to that non-member's land outside the irrigation district's boundaries using the irrigation district's canal and related facilities. In No. S–10–0184, with respect to the award of costs to District, the resolution of that appeal turns on the outcome of the central issue presented in No. S–10–0141.

## FACTS AND PROCEDURAL HISTORY

[¶ 5] Organized in 1929, District exists under the relevant provisions of Wyo. Stat. Ann. Title 41, Chapter 7 (LexisNexis 2011). District owns the Sidon Canal in Big Horn County, Wyoming, which was constructed in 1900 and has been in operation to the present. District covers approximately 13,129.98 acres with 179.57 c.f.s. of adjudicated water rights diverted from the Shoshone River through the Sidon Canal. District also has a permit for supplemental supply from Bitter Creek.

[¶ 6] In 2008, Rageths purchased 559.75 acres situated adjacent to the Sidon Canal with 8 c.f.s. of adjudicated water rights diverted from Bitter Creek at a structure built and maintained by District and conveyed through the Sidon Canal. Their water flows in Sidon Canal for a distance of approximately 6.5 to 7 miles to pump stations where the water is pumped above the canal and used in pivots to irrigate their land. Their land is not located within District's boundaries, and Rageths are not members of District.

[¶ 7] District and previous owners of Rageths' land had agreements establishing their payments for delivery of their water through the Sidon Canal, but these agreements had expired before Rageths' 2008 purchase of

their land.[1] After Rageths purchased the land, they and District negotiated without success to reach agreement establishing a delivery fee. In 2008, District billed Rageths the sum of $7,560.00 for delivering their 8 c.f.s., that sum representing 75% of the gross assessment for District's members, which was based on $18.00 per acre at the time. In 2009, District billed Rageths the sum of $11,200.00, that sum representing 100% of the gross assessment for District's members, which was based on $20.00 per acre at the time. Rageths paid these bills under protest, and District delivered their water throughout the irrigation seasons.

[¶ 8] In July 2009, Rageths filed their action for declaratory judgment to establish a reasonable fee for the delivery of their adjudicated irrigation water through the approximately 6.5 to 7 mile stretch of the Sidon Canal and for reimbursement of alleged overpayments of delivery fees for the prior years. After the litigation was underway, the parties engaged in mediation and, as a result, they executed a stipulation, filed with the district court on April 28, 2010, that resolved issues of ownership and rights to the use of the Sidon Canal, but not the issues of establishing for the future a reasonable delivery fee and reimbursement of alleged overpayments of delivery fees for the prior years.

[¶ 9] With respect to those remaining issues, District filed its motion for summary judgment with supporting material; Rageths responded in opposition to that motion with supporting material; District filed its rejoinder; and the district court heard argument. Following that hearing, the district court granted District's motion and entered its or-

der requiring Rageths to pay District the same per acre fee as District assesses its members on an annual basis.

[¶ 10] Rageths timely filed their notice of appeal from the summary judgment order and that is before us in No. S–10–0141. The district court also entered its order awarding costs to District as the prevailing party, Rageths timely filed their notice of appeal from that order, and that is before us in No. S–10–0184.

## STANDARD OF REVIEW

[¶ 11] Our standard of review for summary judgment is well known and need not be repeated here. *See, e.g., Formisano v. Gaston,* 2011 WY 8, ¶¶ 3–4, 246 P.3d 286, 288–89 (Wyo.2011).

## DISCUSSION

[¶ 12] The district court granted District's summary judgment motion with this brief explanation:

Wyoming Statutes and case law require that irrigation districts operate in a certain manner regarding budgets and assessments. The procedure advocated by the plaintiffs would defeat the purpose of the statutes to provide for uniform treatment of those having legal relationships with an irrigation district. Previous contracts cannot change those statutes or those case law rulings.

In their appellate briefing, the parties agree that the Wyoming statutes applicable to irrigation districts, Wyo. Stat. Ann. Title 41, Chapter 7, and case law pertaining to those statutes do not apply to their dispute and are

---

1. Rageths presented an alternative argument that their annual water delivery fee should be based on District's expired 1964 agreement with Rageths' predecessor in title. They argued that, although the payment provision of that agreement had expired, the agreement itself had not, and the intent of the original parties was relevant to the present dispute and should be carried out here, citing *United Food & Commercial Workers Int'l Union, AFL–CIO, Local 7 v. Gold Star Sausage Co.,* 897 F.2d 1022 (10th Cir.1990). Rageths have not explained how that opinion has application here, and we fail to see a connection. That case concerned the extent to which a union is entitled to compulsory arbitration of certain

grievances arising with an employer after expiration of a collective bargaining agreement which, during its term, unquestionably governed such disputes. The court observed the general rule was that for a dispute to "arise under" an expired contract, a dispute must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect. Because Rageths have made no cogent argument on this alternative issue, we decline to consider it. *Abitbol v. State,* 2008 WY 28, ¶ 19, 178 P.3d 415, 420 (Wyo.2008).

not authority to govern Rageths' legal relationship with District. District states that it "has never argued that the irrigation district assessment laws apply to the Rageths." We agree.

[¶ 13]   To reach a decision in this case, we find it useful to identify those other points on which the parties are in agreement. They agree that the provisions of Wyo. Stat. Ann. § 41–6–303 (LexisNexis 2011),[2] pertaining to joint owners of an irrigation ditch, provide a basis by which Rageths' proportionate share of the expenses related to the operation, maintenance, and repair of the Bitter Creek Diversion and the Sidon Canal can be established, even though District and Rageths are not true joint owners of those irrigation works. This provision recognizes that the interests of each party in a ditch or canal "shall be established by the ratio between the water right of each water user to the total water rights adjudicated under such irrigation works." § 41–6–303. They also agree that the ratio of Rageths' 559.75 acres to District's 13,129.98 acres, which is 4.26%, is the appropriate ratio to be used to determine Rageths' proportionate share of the expenses related to the operation, maintenance, and repair of the diversion and the canal.

[¶ 14]   Both parties also point to Wyo. Stat. Ann. § 41–5–102 and 103 as provisions that inform their discussion about establishing a ditch user's proportionate share of expenses. Rageths correctly observe that these provisions are not controlling authority to the dispute at hand, because by their strict terms they apply only in the case of an irrigating ditch owned by two or more persons. Nevertheless, Rageths maintain that these provisions confirm the legitimacy and validity of their position. District notes that these provisions are helpful in that they, like § 41–6–303, recognize the principle of proportionality. Thus, Wyo. Stat. Ann. § 41–5–102 (LexisNexis 2011) provides:

§ 41–5–102.   Ditches; jointly owned; action to recover proportionate share of work.

In all cases **where irrigating ditches are owned by two (2) or more persons and one (1) or more of such persons shall fail or neglect to do his, her or their proportionate share of the work necessary for the proper maintenance and operation of such ditch** or ditches or to construct suitable head gates or measuring devices at the points where water is diverted from the main ditch, **such owner** or owners **desiring the performance of such work as is reasonably necessary to maintain the ditch, may,** after having given ten (10) days written notice to such owner or owners who have failed to perform his, her or their proportionate share of such work, necessary for the operation and maintenance of said ditch or ditches, **perform** his, her or **their share of such work, and recover therefor from such person or persons so failing to perform** his, her or **their share of such work** in any competent court having jurisdiction of the matter, **the expense or value of such work or labor so performed.** [Emphasis added.]

---

**2.** § 41–6–303. Relative interests of joint owners.

Unless the owners of ditches, canals and reservoirs make a record as herein provided, or have a record thereof made in some other manner, showing the relative ownership of each interested party in such irrigation works, **said interests shall be established by the ratio between the water right of each water user to the total water rights adjudicated under such irrigation works.** The relative interests of joint owners shall, therefore, be fixed by the issuance of the final certificate of appropriation as the same appears of record on the date of the passage of this act or as they shall hereafter be recorded in the office of the board of control and in the office of the respective county clerks, and no action for the recovery of the title to such irrigation works can be brought after ten (10) years from the date when the final certificates of appropriation have been recorded in the office of said county clerk; provided, that during such ten (10) years the interested water users as mentioned in the final certificates of appropriation, or their successors, have had continuous, open, adverse and undisputed possession of such irrigation works. Every conveyance of a ditch, canal or reservoir, or any interest therein, shall hereafter be executed and acknowledged in the same manner as a conveyance of real estate and recorded as herein provided, and any such conveyance which shall not be made in conformity with the provisions of this act, shall be null and void as against subsequent purchasers thereof in good faith and for a valuable consideration. [Emphasis added.]

And, Wyo. Stat. Ann. § 41–5–103 (LexisNexis 2011) provides:

§ 41–5–103. Ditches; jointly owned; lien for work.

**Upon the failure of any co-owner to pay his proportionate share of such expense as mentioned in W.S. 41–5–102,** within thirty (30) days **after receiving a statement of the same as performed by his co-owner** or owners, **such person** or persons **so performing such labor may secure payment** of said claim **by filing an itemized and sworn statement** thereof, **setting forth** the date of the performance and **the nature of the labor so performed,** with the county clerk of the county wherein said ditch is situated, and when so filed it shall constitute a valid lien against the interest of such person or persons who shall fail to perform their proportionate share of the work requisite to the proper maintenance of said ditch, which said lien when so taken may be enforced in the same manner as provided by law for the enforcement of construction liens. [Emphasis added]

[¶ 15] Discussing these statutory provisions, Rageths observe they apply where there is joint ownership of irrigating ditches, which is not the situation in this dispute; District has made no claim that Rageths have failed or neglected to do their proportionate share of the work necessary for the proper maintenance and operation of the irrigating ditch (Sidon Canal); Rageths have never been provided the opportunity by District to do their proportionate share of such work; District has not given Rageths ten days written notice of the necessity of performing such work; District has not performed Rageths' proportionate share of such work and has not sought to recover from them "the expense or value of such work or labor so performed" by District. § 41–5–102. With respect to § 41–5–103, which Rageths correctly note goes hand-in-hand with § 41–5–102, Rageths observe that District has never filed with the county clerk of Big Horn County or given them "an itemized and sworn statement" of the Rageths' proportionate share of the work that District performed, which statement must set forth "the date of the performance and the nature of the labor so performed." § 41–5–103. Rageths correctly note that these statutory provisions vest any competent court having jurisdiction of the matter with authority to determine the expense or value of such work or labor performed. §§ 41–5–102, 103. Rageths assert that these statutory provisions, which District embraces, "contemplate the same type of analysis that Rageths are seeking in this case." They contend that the "expenses" contemplated by these statutory provisions are those that are "necessary for the proper maintenance and operation" of the Bitter Creek Diversion and the Sidon Canal, and are not, as District asserts, all business expenses incurred by District in operating its entire irrigation district system from which Rageths receive no benefit.

[¶ 16] In light of the above and foregoing discussion, it is clear that the parties disagree on how to determine the expenses necessary for the proper maintenance and operation of the Bitter Creek Diversion and the Sidon Canal, for it is to those expenses that the parties will apply the ratio of 4.26% on which they agree. We now consider the parties' respective approaches to how that determination is to be made. For purposes of this consideration, we shall use District's 2008 Fiscal Year Budget and Assessment that District used to determine Rageths' 2009 conveyance fee. District's total assessment of the adjudicated acreage under the Sidon Canal (13,129.98 acres) was $262,599.60. Dividing the total assessment of $262,599.60 by the total adjudicated acreage under the Sidon Canal, the result is $20 per acre. Multiplying Rageths' 559.75 acres by the sum of $20, the result is approximately $11,200.00. That same result is achieved if one simply applies the ratio of 4.26% to the total assessment of $262,599.60.[3] That is District's approach.

[¶ 17] Rageths oppose that approach for the simple reason that District's total assessment of $262,599.60 covers all expenses of operating and maintaining the entire irrigation district system. Rageths point out that there are several categories of expenses in

---

**3.** Multiplying $262,599.60 by 4.26% equals $11,186.74.

District's fiscal year budget reports that do not relate to the operation, maintenance, and repair of the Bitter Creek Diversion and the Sidon Canal. Those include, but are not limited to, "Special Ditches in Cowley and Byron," "Commissioners Services and Mileage," "Office Supplies, Postage and Printing," and "Legal and Accounting." Rageths maintain that none of these particular categories of expenses have anything to do with operation, maintenance, and repair of the Bitter Creek Diversion or the Sidon Canal, or with the delivery of Rageths' 8 c.f.s. to their small acreage.

[¶ 18] In their opposition to District's summary judgment motion, Rageths submitted an affidavit executed by Francis A. Carr, a consultant on water rights issues since his retirement in 1996 after a 28–year career with the Wyoming State Engineer's Office. Mr. Carr conducted a review of District's budget reports for the years 1965 to the present. District has not maintained separate records of actual expenses directly related to the operation, maintenance and repair of the Bitter Creek Diversion and the Sidon Canal. Without those separate records of actual expenses related to those particular irrigation works, it was not possible for Mr. Carr to determine the precise annual proportionate assessment from District's budget reports. Mr. Carr was able, however, to use District's budget reports to calculate a standard percentage to be paid by Rageths to represent their proportionate share of the expenses of operation, maintenance, and repair of those particular irrigation works. As explained by Rageths in their briefing to this Court:

> For [District's] future administrative ease—and to avoid an ongoing dispute over this same issue—Mr. Carr also used [District's] historic Budget Reports in order to calculate a standard percentage to be paid by the Rageths to represent their proportionate share of operation, maintenance and repair of the Sidon Canal and the Bitter Creek diversion. For each year, Mr. Carr determined which expense categories of the Budget Reports were attributable to operation, maintenance and repair of the Sidon Canal and the Bitter Creek diversion. (R 207, ¶ 28). Following

that determination, Mr. Carr calculated the Rageths' proportionate annual payment by multiplying that cost by 4.26%. (R 207, ¶ 28). After that calculation was made, Mr. Carr determined the per acre cost to the Rageths' property by dividing the proportionate cost by the number of acres (559.75). (R 207, ¶ 29). That number was then divided by the actual assessment charged to the District members in each year to determine the percentage of per-acre cost to the Rageths' property to the per-acre assessment paid by District members. (R 207, ¶ 30)....

Mr. Carr presented an example calculation from the 1979 Budget Report in his Affidavit. [District's] total budget for 1979 was $96,000.00. (R 207, ¶ 31). Of that amount, Mr. Carr determined that $44,033.00 could have been attributable to the operation, maintenance and repair of the Sidon Canal and the Bitter Creek diversion. That amount was then multiplied by 4.26% to determine the proportionate share of that expense for the Rageths' property, resulting in $1,875.81 total annual cost. To determine the per-acre cost, Mr. Carr divided $1,875.81 by 559.75, resulting in an expense of $3.35 per acre. The Rageths' per-acre cost ($3.35) was then divided by the per-acre assessment paid by [District] members in 1979 ($7.64) resulting in a ratio of 43.86%. Therefore, in 1979, the per-acre cost for the Rageths' property for expenses related to the operation, maintenance and repair of the Sidon Canal and the Bitter Creek diversion was 43.86% of the per-acre assessment that [District] members paid in that same year. (R. 208, ¶ 31)....

Mr. Carr conducted a similar analysis for each year between 1964 and 2009, as demonstrated by the detailed spreadsheets attached as Exhibit B to his Affidavit. (R 213–221). Following completion of the historical analysis, an average of the annual percentage was calculated. The historical analysis showed that the percentage relationship between the per-acre cost to the Rageths' property and the per-acre cost to [District] members is 38.04%. (R 208, ¶ 32)....

The results of Mr. Carr's calculations of the historic and appropriate apportionment (38.04%) are a far cry from the 75% conveyance fee [District] charged Rageths in 2008 and the 100% conveyance fee charged in 2009 and 2010.

Mr. Carr testified that the 38.04% ratio is conservative and generous to [District] because his analysis was based on Budget Reports, not actual expenditures, and the difficulty in determining whether expenses were directly related to operation, maintenance and repair of the Sidon Canal and Bitter Creek diversion....

Rageths assert that Mr. Carr's analysis of District's historical budget reports and assessments reveals the existence of genuine issues of material fact regarding both the method of calculating Rageths' annual delivery fee in past years and in the years going forward and the amount of refund due Rageths for their overpayment of their delivery fees in the previous several years. They insist that only after a full evidentiary hearing can these issues be determined.

[¶ 19] Responding to the Rageths' argument, District asserts that Rageths are claiming that they may select the expenses to which the 4.26% ratio is applied and that District is required to maintain separate records of the actual expenses requisite to the proper maintenance of the Bitter Creek Diversion and the Sidon Canal. District claims there is no basis in law for Rageths' argument. We disagree. As we understand Rageths' argument, they do not claim they alone may select the appropriate expenses; rather, they simply claim, and we agree, that there are genuine issues of material fact concerning what those appropriate expenses should be to which the 4.26% ratio is to be applied. Certainly, at trial each party shall

have the full opportunity to offer evidence and be heard on the matter of expenses and the trier of fact will make the selection of the appropriate expenses to which the ratio is applied. As for District's statement that Rageths' argument has no legal basis, obviously that legal basis is found in §§ 41–5–102 and 103 and § 41–6–303, the very provisions relied on by both parties. We agree with Rageths that these statutory provisions contemplate the same type of analysis they are advocating to determine the expenses requisite to the proper operation, maintenance, and repair of the Bitter Creek Diversion and the Sidon Canal, as separate from all business expenses District incurs in operating the entire irrigation district system. Pursuant to these statutory provisions, it is the burden of the District, as owner of the Bitter Creek Diversion and the Sidon Canal that is seeking payment from Rageths, as a user of those irrigation works, to establish and justify those requisite itemized expenses.

[¶ 20] District also expresses concern that Rageths are claiming that their proportionate share of the requisite expenses should be based on the 6.5– to 7–mile stretch of the Sidon Canal between the Bitter Creek Diversion and Rageths' pumps. We do find several statements in Rageths' opening and reply briefs that suggest such a limitation. However, we also find in their reply brief this clear statement:

> Rageths ... are responsible for their proportionate share of expenses related to the operation, maintenance and repair of the **Sidon Canal (in its entirety)** and the Bitter Creek Diversion. [Emphasis added.]

We conclude that, in light of this clear statement, District's concern is put to rest.[4]

---

4. In *Gunnison–Fayette Canal Co. v. Roberts*, 12 Utah 2d 153, 364 P.2d 103 (1961), the following sharing problem was presented: A and B are joint water users of a 50–mile ditch. B is entitled to one-half of the water conveyed over a 1–mile stretch, and A is entitled to all of the water conveyed through the 49 miles as well as one-half of the water in the 1–mile stretch shared with B. What proportion of the necessary or reasonable expenses of maintenance should be borne by B? B contends that he should be liable for contribution for only that portion of the canal that was used to convey his water. The majority of the court decided that apportionment according to the number of miles of canal used by a particular water user would be impracticable and suggested that the Utah statute, which provided that the ditch owner shall pay in proportion to the share in the use or ownership of the water to which he is entitled, means that B's share is that proportion of the total cost that the amount of water B actually received bears to the total amount of water in the canal. A concurring opinion, while also rejecting the contention of allocation based on the length of the canal used

[¶ 21] As we reflected on the tenor of the statutory provisions and the parties' respective arguments, we thought that independent recourse to Restatement (Third) of Property: Servitudes, *Duties of Repair and Maintenance,* § 4.13 (2011) might be of value to inform our resolution of this dispute. On a number of occasions we have favorably referred to that authority for guidance in our decision-making. *See, e.g., Hansuld v. Lariat Diesel,* 2010 WY 160, ¶ 14, 245 P.3d 293, 299 (Wyo.2010); *Foxley & Co. v. Ellis,* 2009 WY 16, ¶ 19, 201 P.3d 425, 430 (Wyo.2009); *Seven Lakes Dev. Co. v. Maxson,* 2006 WY 136, ¶ 33, 144 P.3d 1239, 1251 (Wyo.2006); *White v. Allen,* 2003 WY 39, ¶ 16, 65 P.3d 395, 400 (Wyo.2003); and *Hasvold v. Park Cty. Sch. Dist. No. 6,* 2002 WY 65, ¶ 14, 45 P.3d 635, 638–39 (Wyo.2002). In relevant part, § 4.13(4) states:

> (4) The holders of separate easements or profits who use the same improvements or portion of the servient estate in the enjoyment of their servitudes have a duty to each other to contribute to the reasonable costs of repair and maintenance of the improvements or portion of the servient estate.

Restatement of Prop.: Servitudes § 4.13(4) (2011). Comment e. to this section states in relevant part:

> e. *Maintenance and repair obligations among holders of separate easements, subsection (4).* The holders of separate easement rights to use the same improvements are obligated to contribute to the reasonable costs of repair and maintenance of the portion of the servient estate or the improvements used in enjoyment of the servitude. The rule stated in this section governs the relationship among the servitude beneficiaries; it does not govern their relationship with the owner of the servient estate, which is determined under subsections (1), (2), and (3). No affirmative duty to initiate repair is imposed by this section, but once repair or maintenance is reasonably undertaken by one or more of the servitude beneficiaries, the others have a

duty to contribute to the reasonable costs. The responsibility of each user should reflect a fair proportion of the costs. The basis of fair apportionment will vary depending on the circumstances. Factors that may be relevant include the amount and intensity of actual use and the value of other contributions made by the users to improvement and maintenance of the easement or profit.

*Id.*

[¶ 22] Our independent research of the numerous court decisions across the country using § 4.13 for guidance led us to *Freeman v. Sorchych,* 226 Ariz. 242, 245 P.3d 927 (App.2011), which raised the issue whether dominant estate holders using an appurtenant roadway easement must share in the costs necessary to maintain and repair that common easement in the absence of a cost-sharing agreement or a provision imposing such an obligation within the document conveying the easement. *Id.* at 929. Following an extensive review of the Restatement provision and numerous common law decisions from other states, the Arizona court concluded that the doctrine of equitable contribution applied in such a situation. *Id.* at 934–35. That court then stated:

> Our decision does not, however, mandate an equal or "fifty/fifty" sharing agreement. Instead, each party's contribution should be based on an equitable apportionment determined after consideration of various relevant factors, which may include but are not limited to each party's proportionate use of the easement, including the amount and intensity of actual use, and the benefits derived therefore; whether each party receive proper notice and a reasonable opportunity to participate in the decisions regarding repairs and maintenance; whether the completed work was reasonable and necessary; whether the repairs and maintenance were performed adequately, properly, and at a reasonable price; the value of any other contributions (monetary or in kind) by the parties to

---

by B, suggested that the hypothetical users should share in the ratio of 49.5 miles for A and one-half mile for B. *See also Swasey v. Rocky Point Ditch Co.,* 617 P.2d 375 (Utah 1980), *re-* *manded,* 660 P.2d 224 (Utah 1983), which followed *Gunnison–Fayette,* holding assessments should not be based upon proportion of ditch used but upon ownership or use of the water.

repairs and maintenance; and any other factors that may be deemed relevant. *See generally Healy v. Onstott,* 192 Cal.App.3d 612, 617, 237 Cal.Rptr. 540 (1987) (stating that "the trier of fact must be allowed to fashion any reasonable contribution scheme").

*Freeman,* 245 P.3d at 935–36 (footnotes omitted).

[¶ 23] Having carefully considered the parties' briefs, the record, the pertinent statutory provisions, and the authority revealed by our independent research, we find there exist genuine issues of material fact that must be determined only after a full evidentiary hearing. Rageths' proportionate share of the requisite expenses must be based on an equitable apportionment determined after consideration of the various relevant factors. Consequently, we reverse the district court's orders in No. S–10–0141 and No. S–10–0184 and remand for further proceedings consistent with this opinion.