# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 51

APRIL TERM, A.D. 2013

April 30, 2013

JAMES E. KOCH,

**Appellant**
**(Defendant),**

v.

S-12-0179

J&J RANCH, LLC, a Wyoming
Limited Liability Company,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    Daniel B. Frank of Frank Law Office, P.C., Cheyenne, Wyoming

*Representing Appellee:*
    James R. Salisbury of Riske & Salisbury, P.C., Cheyenne, Wyoming

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    The parties are two rural landowners who own easements crossing a parcel of ranchland in Laramie County, Wyoming.  When Appellant James Koch improved the common roadway and asked his neighbor to contribute to the cost of those improvements, Appellee J&J Ranch, LLC brought suit against Koch in the District Court for the First Judicial District.  J&J sought a declaratory judgment as to the parties' respective rights and duties relating to maintenance and repair of the road, as well as injunctive relief and damages for Koch's alleged interference with J&J's use of the easement.

[¶2]    Koch responded with similar counterclaims, but also claimed the right to equitable contribution from J&J for the costs he incurred in improving the road.  We will affirm the district court's denial of Koch's request for equitable contribution,  but reverse its declaration of the parties' rights regarding any future maintenance work and as to the rights of the parties to recover for repair and maintenance they perform.[1]

## ISSUES

[¶3]    We restate the questions raised by this appeal as follows:

> 1.    Was the district court's denial of Koch's equitable contribution claim consistent with the principles set out in *Rageth v. Sidon Irrigation District*, 2011 WY 121, 258 P.3d 712 (Wyo. 2011), and otherwise not clearly erroneous or an abuse of discretion?
>
> 2.    Did the court err as a matter of law when it declared that:
>
> a.    Appellant had no right to repair or maintain the easement?
> b.    Appellant had no right to recover a portion of the costs of repair or maintenance from Appellee?
> c.    Appellant's use of the easement could not exceed the boundaries of his grant?

---

[1] We decline J&J's invitation to consider how resolution of its dispute with Koch will affect the owner of the servient estate, who is not a party to this litigation.  As a corollary to principles of standing, courts should not ordinarily adjudicate the rights of non-parties.  *Olsen v. Olsen,* 2011 WY 30, ¶ 14, 247 P.3d 77, 81 (Wyo. 2011); *Singleton v. Wulff,* 428 U.S. 106, 113-14, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976).

## FACTS

[¶4]    Dean Fogg was the original owner of the servient estate involved in this case.  In July of 1979, Fogg granted a road easement to Jerry Palen, who sold his property (including the appurtenant easement) to Morris and Judy Perkins in 1991.  Appellant Koch purchased that property in March 2006.  After Fogg died in 2004, the servient property passed through a trust he had created to his daughter, Janet Shatto.  J&J purchased an easement over the roadway used by Palen and his successors from Shatto in October of 2007.

[¶5]    Koch's road easement describes its width as "a minimum of thirty (30) feet," and it contains no provisions regarding maintenance of the road.  J&J's easement limits the width of its road to thirty feet, but it also provides that J&J "agrees to maintain the road easement."

[¶6]    The road used by Koch and J&J begins at Campstool Road east of Cheyenne, and then proceeds south for approximately one mile.  The road then reaches a Y, from which Koch has to travel a short distance to the southwest to reach his property.  To reach the J&J property from that point one has to drive another mile, first bearing to the southeast, then directly to the east, and then due south.  Approximately two-thirds of this second mile lie on a separate easement granted to J&J by Arp & Hammond Hardware Company in May of 2008.

[¶7]    For most of its history, the common portion of Koch's and J&J's easements "was just a two-rutted road through the pasture" that received little or no maintenance.  Although Mr. Perkins occasionally dumped some gravel in the deepest ruts and mud puddles on the road while he owned the property, and although others occasionally dragged old tires down the road in an effort to smooth it, the more common practice was to simply drive around those obstructions, thereby widening the road.  The topography of the land through which the road runs allowed snow to drift on it, at times preventing its use for up to a week.

[¶8]    By the time Koch acquired his property in 2006, years of use and the cumulative effect of weather had lowered the roadbed nearly three feet below the adjacent pastureland.  As a result, snowmelt and rain filled the road, washed downhill, and created large waterholes and puddles in most low-lying areas.  In the one-mile course of the easement there were approximately twenty such holes which, when full, were three feet deep and impassable by ordinary passenger vehicles.  When Koch moved onto his newly-acquired property in 2006, he could not pull his horse trailer down the road with his dual-wheel, four-wheel-drive Dodge pickup truck and had to wait nearly three weeks for the road to dry out.

2

[¶9]    Koch is an excavating contractor, and he therefore owns heavy equipment suitable for road maintenance.  After Koch moved in, he obtained permission from Dean Fogg's son Dennis to fill the mudholes and level the road with a front-end loader in 2006 and 2007.

[¶10]  Some time in 2006, Koch met James Johnson, J&J's owner and manager.  The two talked about the poor condition of the road, and Johnson proposed that they work together to fix it.  He asked Koch about gravelling it.  Koch believed gravelling would be too expensive, and the two orally agreed that Koch would instead use his loader to cut a small ditch along the road in the areas which filled with water, and that he would push the soil excavated from the ditches to the center of the road, thus elevating it.  They hoped those measures would drain water in problem areas and allow the road to dry more quickly.  Koch performed the agreed work in 2006 and 2007, and he also periodically smoothed the road and plowed snow from it.  Johnson paid Koch for a portion of the cost of the work, which came to approximately $800 in each year.

[¶11]  In 2008, Koch decided to improve the road by transforming the small ditches he had made into true borrow ditches and by using the soil he would remove when he deepened and widened the ditches to increase the height of the road, which would in turn hopefully provide still better drainage and reduce snow drifts.  In March of that year he billed Johnson $700 for what he claimed was Johnson's share of the cost of the ditching and elevation work he had done that January and February.   When Koch informed Johnson that $350 per month was going to be his share of the costs "from here on out," Johnson refused to pay the bill.  After that, the two had no further discussions about snow removal, road maintenance, or improvement of the road.   Koch never again billed Johnson for any work except for $200 for road grading in June of 2008, which Johnson paid.

[¶12]  Unfortunately, the work Koch did in 2008 did not result in improvement to the road.  The material he removed from the ditches was mainly sand, which did not compact well when placed on the road.  Consequently, it absorbed and held water rather than allowing it to drain as Koch originally intended.  The relatively soft and unstable sand surface also made the road more difficult for cars to travel, because it developed deep ruts in which they could become stuck.

[¶13]  Koch improved the road dramatically in 2009.  He obtained permission from the owner of the servient estate to dig into adjacent hills for rock, which he then placed on top of the sand roadway, which made it much more stable and also increased drainage.  All parties agree that the efforts produced a far better road than had existed before.

[¶14]  On September 21, 2009, J&J filed a lawsuit in which it made a number of claims against and sought various forms of relief from Koch.  Only one of those claims is before the Court in this appeal, and that is a request for a declaration of the parties' respective

3

rights and responsibilities as to maintenance of their shared road. On October 12, Koch filed an answer and counterclaim seeking relief on two bases relevant to this appeal: he sought a declaratory judgment claim similar to that of J&J, and he also asked for a judgment against J&J for its equitable share of the costs he incurred in improving the road in 2009.

[¶15] A bench trial began on October 18, 2011. The parties presented evidence as described above, and argued about the proper application of this Court's then-recent decision in *Rageth v. Sidon Irrigation District*, 2011 WY 121, 258 P.3d 712 (Wyo. 2011), to their claims. The district court ruled in J&J's favor by a decision letter dated March 9, 2012, and it entered a formal Order and Judgment reflecting that earlier decision on May 15, 2012. This appeal was timely perfected.

## STANDARD OF REVIEW

[¶16] We review factual findings made after a bench trial for clear error. We examine all properly admitted evidence and not just that of the prevailing party, but we defer to the trial court's ability to evaluate the credibility of witnesses, and we do not reweigh disputed evidence. We will not overturn the trial court's findings unless the entirety of the evidence leaves us with the definite and firm conviction that the court was mistaken. A district court's conclusions of law are subject to *de novo* review, however. *BJ Hough, LLC v. City of Cheyenne*, 2012 WY 140, ¶ 8, 287 P.3d 761, 764 (Wyo. 2012) (citation omitted).

[¶17] The district court was required to equitably balance certain factors when considering whether Appellant Koch was entitled to recover contribution for the cost of work on the road involved in this case. When reviewing decisions requiring the application of principles of equity, we apply the abuse of discretion standard and determine whether the court could reasonably conclude as it did. *Kennedy Oil v. Lance Oil & Gas Co.*, 2006 WY 9, ¶ 14, 126 P.3d 875, 879 (Wyo. 2006); *Jacoby v. Jacoby*, 2004 WY 140, ¶ 7, 100 P.3d 852, 855 (Wyo. 2004); *Harber v. Jensen*, 2004 WY 104, ¶ 8, 97 P.3d 57, 60 (Wyo. 2004).

## DISCUSSION

[¶18] The issues in this case relate to our decision in *Rageth v. Sidon Irrigation District*, 2011 WY 121, 258 P.3d 712 (Wyo. 2011). That case involved a dispute over how to apportion the cost of maintaining an irrigation canal among those using it to carry water. The plaintiffs were not members of the irrigation district that operated the canal and sought a determination of their rights and responsibilities. To resolve the issue of contribution, we adopted the "equitable contribution" doctrine of the Restatement (Third) of Property: Servitudes § 4.13, as discussed in *Freeman v. Sorchych*, 245 P.3d 927 (Ariz. Ct. App. 2011). *Rageth*, ¶¶ 21-22, 258 P.3d at 719.

[¶19]  Section 4.13(4) provides that:

> The holders of separate easements or profits who use the same improvements or portion of the servient estate in the enjoyment of their servitudes have a duty to each other to contribute to the reasonable costs of repair and maintenance of the improvements or portion of the servient estate.

Restatement (Third) of Property: Servitudes § 4.13(4) (2000).  Comment *e* to § 4.13 further explains that once a servitude beneficiary performs reasonable repairs or maintenance on an easement, other beneficiaries have a duty to contribute their fair share of any reasonable costs he incurred.  Depending on the circumstances, factors relevant to the apportionment of those costs may include the amount and intensity of each easement holder's actual use of the property and the value of repairs or maintenance they have performed. *Id.*, cmt. *e*.

[¶20]  The *Freeman* court preceded its discussion of § 4.13 by noting that absent an agreement forbidding him to do so, an easement holder has the right to maintain and repair a road to which the easement relates.  *Freeman*, 245 P.3d at 933.  *See also* 28A C.J.S. *Easements* §§ 227, 231 (updated March 2013) (repairs must be reasonably necessary to his enjoyment of the easement).  The *Freeman* court then reviewed Restatement § 4.13 in light of common law decisions from other states, and concluded that a court should balance a number of relevant circumstances when it equitably apportions the costs of repairing and maintaining a road among easement holders. *Rageth*, ¶ 22, 258 P.3d at 719-20; *Freeman*, 245 P.3d at 934-36.

[¶21]  Those circumstances include but are not limited to:  (1) the amount and intensity of each party's actual use of the road and the benefits they derive from that use; (2) whether a party had notice of and an opportunity to participate in repair and maintenance decisions; (3) whether the work consisted of reasonable and necessary repairs and maintenance, rather than improvements to the road; (4) whether the quality and price of the work was reasonable; and (5) the value of other monetary or in-kind contributions to repair and maintenance made by the parties. *Rageth*, ¶ 22, 258 P.3d at 719-20; *Freeman*, 245 P.3d at 935-36.

[¶22]  Although the district court did not expressly mention the *Rageth/Freeman* test in its decision letter, the circumstances it did address and the amount of time it spent discussing the application of that test to the evidence before it at trial convinces us that the district court did in fact consider and weigh three of the five equitable factors of the test.  As to the first of those factors, the court noted that J&J was not overly concerned with the road's original condition because of the limited use it made of the easement.  On the other hand, Koch kept heavy equipment for his excavation and haying business on his

property and also provided commercial storage of trailers and tractors owned by others. He boarded horses for a fee as well. He therefore stood to benefit financially from improvements that make the road more useable for him and for his customers, while J&J gained little if anything from those improvements.

[¶23] The court also spoke to the notice given J&J regarding the work done by Koch in 2008 and 2009, as well as J&J's participation in the decision to perform that work. The court observed that for two years J&J had paid Koch for its share of the routine road maintenance work he performed, but that in early 2008 it refused to pay him for the more extensive rebuilding he had done. After that rift, Koch stopped billing J&J because he no longer expected to be paid, and J&J had no further "choice or say so in [Koch's] performance of the work." Koch improved the road anyway.

[¶24] Finally, the district court viewed Koch's work as something more than reasonable and necessary repairs and maintenance, finding that "the uncontroverted evidence was that [Koch] undertook what amounts to reconstruction of the road." Koch created a much-improved road approaching the quality of those built and maintained by the county – he did not simply repair or maintain the road that existed prior to 2008.

[¶25] These circumstances justify the district court's discretionary decision to deny Koch's claim for equitable contribution from J&J. The *Rageth/Freeman* balancing test does not require an equal division of expenditures necessary to repair and maintain J&J's and Koch's common easement. *Rageth*, ¶ 22, 258 P.3d at 719; *Freeman*, 245 P.3d at 935. It may require no contribution at all under certain circumstances.

[¶26] The Restatement rule adopted in *Rageth* and *Freeman* permitted Koch to perform repairs and maintenance and to seek contribution from other users of the easement for that work so long as it did not go beyond repairs and maintenance reasonably necessary to his and J&J's enjoyment of their easements. Through 2007 Koch did just that sort of work, and J&J paid him for its share of the maintenance and repair costs. Thereafter, he expanded his efforts and, as the district court reasonably found, completely rebuilt the road, raising its surface instead of merely filling in troublesome low spots and transforming rudimentary drainage ditches into much larger borrow ditches.

[¶27] By his own admission, the work Koch did in 2008 actually made it more difficult to use the road, and that work was thus of no benefit to J&J. His work in 2009, which further raised the road by topping the sand with stabilizing rock, was in part a successful effort to fix the damage done the previous year. Under the circumstances, the district court reasonably concluded that J&J should not be required to pay for Koch's mistakes.

[¶28] The district court's conclusion is even more reasonable in light of the "notice" problems in this case. The equitable contribution rule requires a court to determine whether a prospective contributing party had notice of and an opportunity to participate

in decisions relating to the repair and maintenance of a common road. In our view, notice is important because it gives a party the opportunity to respond to a proposal in some fashion, thus perhaps defining expectations.

[¶29] Koch and J&J informally agreed in 2006 that Koch would use his heavy equipment to make necessary repairs to the road and to maintain it, and that J&J would pay its share of the costs. That arrangement was in place in 2006 and 2007. In 2008, Koch took it upon himself to perform additional work on the road and in March of that year gave J&J belated notice of his intent by informing J&J that its share of the costs would now be five times what it had been paying. J&J refused to pay for such extensive work and, except for a mid-2008 payment for routine road grading, made no further payments to Koch. Despite J&J's refusal to pay and Koch's acknowledgement at trial that he did not expect to be paid for his work after that, Koch rebuilt the road.

[¶30] For these reasons, we conclude that the district court acted reasonably and that its findings were not clearly erroneous. We also find that the district court properly and equitably balanced the *Rageth/Freeman* factors, and that it did not abuse its discretion in reaching the conclusion that it did.

[¶31] However, we cannot similarly affirm portions of the district court's order granting declaratory relief to J&J. In paragraphs b, c, and g of that order, the court held that Koch could not widen the road or use any part of the servient estate outside the boundaries of the Fogg/Palen easement he now owns, and that he would commit trespass if he did so. First of all, the grant from Fogg to Palen established the minimum width of the easement, and it does not define its maximum width, making the decision too indefinite to enforce. J&J's easement is limited to thirty feet, but Koch's may be wider.

[¶32] More importantly, the district court's ruling determines Koch's rights to use the easement as they relate to the correlative rights of the owner of the servient estate, who is not a party in this case. J&J has no interest in the servient estate – its interests are limited to assuring that it has reasonable ingress and egress to its property.[2] As stated above in footnote 1, this Court and trial courts should ordinarily refrain from adjudicating the rights of non-parties in order to maintain consistency with well-established principles of standing. This case presents no justification for departing from that common sense rule.

[¶33] We also conclude that the district court erred as a matter of law with respect to paragraphs d, e, and k of its judgment, in which it held that Koch had no right to maintain the road or to seek reimbursement from J&J if he does so, and that J&J has the exclusive right to maintain the road, which it may do in any reasonable manner. Although

---

[2] J&J might argue that its share of maintenance expenses might increase if the road were widened. We believe that the *Rageth/Freeman* rule provides a framework for assuring a fair assessment of maintenance use in light of J&J's historical and current use of the common easement.

provision d correctly states that Koch has no obligation to maintain the road, it incorrectly holds that he has no right to maintain the road and cannot do so.

[¶34] The owner of an easement has a right to maintain it. *Freeman*, 245 P.3d at 933. *See also Lynch v. Keck*, 263 N.E.2d 176, 183 (Ind. App. 1970); *Seymour v. Harris Trust & Sav. Bank of Chicago*, 636 N.E.2d 985, 994 (Ill. App. 1994); 28A C.J.S. *Easements* §§ 227, 231. Paragraph d cannot be reconciled with the district court's finding that "inherent in [Koch's] easement and his right of access created by it, he must be permitted to perform some level of maintenance," which is a correct statement of the law.

[¶35] The district court did not explain the basis for the part of its ruling holding that Koch had no right to maintain, but it may have believed that the provision in J&J's grant requiring it to maintain the easement created an exclusive right for it to do so. This is not accurate. First of all, the plain language of the easement requiring J&J to maintain the easement allocated the obligation between J&J and Ms. Shatto, the owner of the servient estate. Koch and his predecessors were not parties to that grant or agreement.

[¶36] Secondly, Koch's predecessor in title received his easement years before J&J did. As part of that grant, he received the right to maintain the easement. Even if Ms. Shatto had intended to convey the exclusive right to maintain it, that grant would have failed, because she could not reach back in time and remove one of the "bundle of sticks" or rights Koch's predecessor received in an earlier grant. She no longer owned the exclusive right to maintain the easement at the time of her grant to J&J, and she therefore could not convey it. *See, e.g. City of Boulder v. Farmer's Reservoir & Irrigation Co.*, 214 P.3d 563, 566-68 (Colo. App. 2009) (servient estate may not unilaterally alter easement so as to adversely affect maintenance rights of dominant estate owner).

[¶37] Paragraph e of the judgment determined that Koch has no right or authority to recover the costs of maintenance. This is correct as it relates to the expenses incurred in the 2009 project. However, it would appear from findings j and k that the Court intended to go farther and to hold that Koch would have no future right to recover for any maintenance he might perform. We disagree. As we have already discussed, when parties share in the use of a private roadway, they must ordinarily share in the costs of repair and maintenance.[3] *Rageth*, ¶¶ 21-22, 258 P.3d at 719; *Freeman*, 245 P.3d at 934-35; *Brentwood Subdiv. Rd. Ass'n v. Cooper*, 461 N.W.2d 340, 342 (Iowa App. 1990); *Lakeland Prop. Owners Ass'n v. Larson*, 459 N.E.2d 1164, 1169-70 (Ill. App. 1984); *Quinlan v. Stouffe*, 823 N.E.2d 597, 606 (Ill. App. 2005); Restatement, *supra,* § 4.13(4) and cmt *e*.

---

[3] Whether the parties to an easement might agree that one will have an exclusive right to maintain or no obligation to pay the costs of doing so is a question not raised by the facts of this case.

[¶38] Koch has the right to assure that his easement remains passable by performing reasonably necessary repair and maintenance work on the road, as well as the right to seek equitable contribution for that work from J&J. For that reason we must also reject provision k of the district court's declaratory order, which entrusts J&J with the sole discretion to make all decisions concerning whether future road repairs and maintenance will be performed at all, the manner in which any work will be performed, and the standards the repair or maintenance work must meet.

[¶39] We will therefore reverse that portion of the district court's judgment awarding declaratory relief to J&J and remand for entry of an order granting relief consistent with this opinion. We find it unnecessary to remand for a reevaluation of the district court's decision regarding reimbursement for the 2009 road work. As we noted above, the record supports the trial court's decision to deny reimbursement for work done in that year, and to that extent this decision only establishes a right to equitable reimbursement for future repairs or maintenance under *Rageth* and *Freeman*.

## CONCLUSION

[¶40] The district court made findings which were not erroneous in light of the record before it, and it likewise reasonably exercised its discretion in denying Koch's claim for an equitable contribution for the cost of rebuilding the parties' common private road. Consequently, we will affirm that portion of the district court's decision.

[¶41] Because the provisions of the court's declaratory relief order finding that Koch cannot maintain the easement or recover a share of the cost of doing so if he does cannot be sustained as a matter of law, we reverse and remand for entry of an order granting declaratory relief consistent with this decision. We also reverse the district court's determination that Koch may not use any portion of the easement outside the boundaries of the Fogg/Palen grant because the owner of the servient estate was not a party to this case. Affirmed in part, reversed in part, and remanded.

9