[Cite as *Johnson's Island Property Owners' Assn. v. Cianciola*, 2021-Ohio-1341.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Johnson's Island Property
Owners' Assoc.

      Appellee

v.

Anthony Cianciola, et al.

      Appellants

Court of Appeals No. OT-20-011

Trial Court No. 18CV382

**<u>DECISION AND JUDGMENT</u>**

Decided:  April 16, 2021

* * * * *

John A. Coppeler, for appellee.

George C. Wilber, for appellants.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellants, Anthony and Elizabeth

Cianciola, from the May 4, 2020 judgment of the Ottawa County Court of Common Pleas.

For the reasons that follow, we affirm, in part, and modify the May 4, 2020 judgment.

## Assignments of Error

I.  The Trial Court Erred as a Matter of Law in Failing to Follow "Common Law Principles" in Regards to the Duty of a Dominant Estate Easement Owner to Contribute to the Repair and Maintenance Cost of a Common Private Roadway.

II.  The Trial Court Erred in Failing to Follow the Judicial Doctrines of Res Judicata and Stare Decisis in Reaching a Decision That Was Not Only at Odds with the Prior Findings and Holdings of this Court but Also Was Contrary to the Prior Decisions of the Trial Court Itself.

## Background

{¶ 2} This is the latest in a series of cases involving payment for repair and maintenance to the roadways on Johnson's Island.  These cases, to varying degrees, involve the following parties:  appellants, who own property on Johnson's Island in the Bay Haven Estates subdivision; appellee, Johnson's Island Property Owners' Association ("JIPOA"), a property owners' association compiled of two of the three subdivisions on Johnson's Island (Bay Haven Estates and Shiloh Estates); Johnson's Island Investment Group, LLC ("JIIG"), which is the owner of the roads and causeway on Johnson's Island; and Baycliffs Homeowners Association (BHOA"), the homeowners' association for the third subdivision on Johnson's Island, Baycliffs.

{¶ 3} The first of the cases, *Baycliffs Homeowners' Association v. Johnson's Island Property Owners' Assn.*, Ottawa C.P. No. 04-CHV-202 was brought by BHOA

2.

against JIPOA over issues pertaining to the repair and maintenance of the island roadways and causeway. This case was ultimately settled. As part of the settlement, JIPOA, BHOA, JIIG, and some Johnson Island property owners who were not members of either homeowners' association (jointly "non-member owners") entered into an Operating Agreement For Governance Of Johnson's Island Causeway and Roadways ("operating agreement").

{¶ 4} The operating agreement provided for the establishment of a road commission, a seven-member entity consisting of representatives of JIPOA, BHOA, JIIG and the non-member owners, which would have the "authority and responsibility to oversee the planning, budgeting, administration, management, maintenance, repair and improvement * * * of Island Roads, the Causeway, and the Tollgate." The operating agreement required the road commission to develop two annual budgets—one budget for the causeway and tollgate which is to include a reserve fund, and a budget for the island roads. In addition, the operating agreement provides for two sources of funding for the road commission: revenue generated from the tollgate and assessments advanced by JIPOA and BHOA which represent the total annual shares owed by each property owner for which each homeowners' association has been given the responsibility of billing and collection. Pursuant to the operating agreement, the road commission is to determine the "annual share" owed by each property owner. A property owner only pays one "annual share" regardless of how many lots each property owner owns.

3.

{¶ 5} The second case in the series was *Cianciola v. Johnson's Island Property Owners' Assn.*, Ottawa C.P. Nos. 10CV232H and 10CV366H ("*Cianciola 1*"). In this case, appellants and other property owners on Johnson's Island brought suit against JIPOA seeking a declaratory judgment to quiet title and an injunction to prevent JIPOA from enforcing its amended code of regulations against the plaintiff property owners, including appellants. Of concern in that case was the fact that the amended code of regulations gave JIPOA authority to impose assessments on the property owners. The trial court granted a motion for summary judgment filed by the appellants and the other property owners and found that JIPOA's code of regulations was not enforceable against them since the amended code of regulations was not in their chain of title. The trial court's judgment entry (hereinafter "2011 injunction order"), in part, enjoined and restrained JIPOA and others acting in concert with JIPOA "from directly or indirectly attempting to enforce the Amended Code of Regulations or the Operating Agreement against [appellants]" and further restrained and enjoined them from "making any filings or publications that may cloud [appellants'] titles."

{¶ 6} The 2011 injunction order was appealed to this court, and we affirmed, stating in relevant part, that since the code of regulations and operating agreement are not restrictive covenants, they "provide no authority to JIPOA to take action that would cloud [appellants'] title" and further that the injunction "prevents JIPOA from taking action pursuant to the code of regulations and operating agreement." *Cianciola v. Johnson's Island Property Owner's Assn.*, 2012-Ohio-5261, 981 N.E.2d 311, ¶ 28-29 (6th Dist.).

4.

**{¶ 7}** Next, in 2016, JIPOA filed a complaint against appellants in the Ottawa County Municipal Court in case No. CVF1600777. This complaint made reference to the operating agreement, but alleged that appellants were required to pay a proportionate share of the cost to repair and maintain the island roadways based upon common law principles. Months later, appellants filed a motion to show cause in the Ottawa County Common Pleas Court in case No. 10CV232 arguing that the municipal court complaint was an attempt to enforce the code of regulations and operating agreement which violated the 2011 injunction order.

**{¶ 8}** The motion to show cause was denied at the trial court level, and then appealed to this court. We affirmed the trial court's decision, concluding that references in the complaint to the operating agreement and the road commission "merely explain the manner in which JIPOA has attempted to collect the proportionate share of road maintenance and repair expenses from [appellants]" but were not cited as the basis of JIPOA's legal claims. *Cianciola v. Johnson's Island Property Owners Assoc.*, 6th Dist. Ottawa No. OT-17-027, 2018-Ohio-2037, ¶ 14 ("*Cianciola 2*"). We concluded that, when considering only the allegations in JIPOA's municipal court complaint, JIPOA's claims were "rooted in the common law obligation of an owner of an easement to perform reasonable repairs and maintenance when necessary." *Id*. at ¶ 17. We did, however, note that "[t]o the extent JIPOA's claims cannot be established solely based upon common law principles and without reference to the operating agreement and code

5.

of regulations, they will fail on the merits." *Id*. at ¶ 15. The municipal court case was ultimately dismissed without prejudice.

### Present Case

{¶ 9} On October 9, 2018, JIPOA filed a complaint against appellants in the Ottawa County Common Pleas Court seeking to recover costs incurred for the causeway and road repair and maintenance for the years 2010 through 2018, based on claims of unjust enrichment and quantum meruit. JIPOA's complaint also includes a request for a declaratory judgment that appellants' "proportionate share" "should be calculated based on the concept of an 'equal share' among all property owner[s] on Johnson's Island and not based on the number of lots owned by [appellants] or on any other basis."

{¶ 10} On November 26, 2018, appellants filed their answer and a counterclaim alleging JIPOA's complaint attempts to enforce the operating agreement against the appellants and thus violates the 2011 injunction order. Appellants seek damages as a result.

{¶ 11} A two-day bench trial was had on November 25 and 26, 2019, and the following relevant testimony was presented.

{¶ 12} On the first day of trial, JIPOA called Michael Kelty, who at various times has been a member of JIPOA, JIIG, and the road commission. Kelty detailed how the road commission evaluates the condition of the roads and what projects should be done to maintain them. He explained that the road commission had studies done to evaluate the condition of the roads and causeway. The commission then considered the "state of

6.

disrepair as expressed in the * * * studies and the availability of drainage laterals to the Sandusky Bay" when determining the priority of road projects. According to Kelty, the road commission would get multiple bids on a project and then elect one of the bidding companies to do a project.

{¶ 13} Kelty also described the actual expenditures incurred by the road commission and that these amounts are billed out to the two homeowners' associations who pay for the shares owed by all island property owners assigned to that association and then the association bills the individual property owners. He also testified that the amount paid by the association includes any amount apportioned to nonpayers. He further explained that when drafting the operating agreement, the methodology for proportioning the cost to each owner was discussed and "various ways, frontage, value of property and by owner" were considered before it was decided that "the benefit of crossing over the causeway and roads isn't much affected by how many lots you have," so it would be equitable to apportion based on a per owner basis. Later, when recalled by JIPOA, Kelty added that apportioning based on value would be difficult to manage "because valuations change frequently" which would increase the administrative burden on the system.

{¶ 14} Kelty stated that JIPOA has two general meetings a year to which everyone, including nonmembers, are invited and at those meetings, participants are updated as to "what is going on with the road commission" and that the road commission also has quarterly meetings which are open to everyone. He also testified that the

7.

minutes of the road commission meetings are available to the public on the road commission's website, although he later admitted that the website was not up-to-date.

{¶ 15} On cross-examination, Kelty explained the road commission creates a budget and then collects assessments in advance based on the budget. If money is not spent, it is put in three reserve accounts, including one for "good roads" that need to be maintained. Actual expenses have an "up and down" effect from year to year as the road commission schedules a major project every other year to "avail [itself] of the economies of scale."[1] He also agreed that the list of actual expenses included taxes, insurance and administrative expenses. He admitted he was unaware of any specific steps to contact appellants directly regarding road projects.

{¶ 16} Upon redirect examination, Kelty testified that "the projects undertaken through the road commission for the period of time in question for maintenance and repair of the roads and causeway" were "reasonable and necessary."

{¶ 17} JIPOA next called Barry Neumann, an engineer at Richland Engineering, Limited, a company that evaluated the causeway[2] a number of times. Neumann detailed the findings in the evaluations and testified to problems with the causeway as well as recommendations made and the work done. He also testified "repairs" done in 2014 were

---

[1] Actual expenses differ from the assessments which remain relatively constant. The evidence shows the actual expenses incurred per property owner during the period from 2010-2018 was $3,364, whereas the total assessment amount billed to each property owner during that period was $3,109.

[2] The causeway is a span of five bridges.

8.

"reasonable and necessary" and there would be "a need for ongoing maintenance of the causeway bridges."

{¶ 18} On cross-examination, Neumann stated in 2007, the overall rating of the causeway was either "fair or satisfactory."

{¶ 19} JIPOA's third witness was Rich Schulz, a property owner on Johnson's Island in the Baycliffs subdivision who was in the construction business for over forty years. Schulz was president of BHOA at the time the operating agreement was entered into, and he participated in the negotiation and finalization of the agreement. He was also a member of the road commission.

{¶ 20} Schulz testified about obtaining engineering and expert advice concerning how to take care of the roads in accordance with the studies previously discussed. Schulz outlined the procedure for determining priority of projects. He explained that drainage agreements were necessary because without proper drainage "the wet gets underneath the road and softens the base" and in the wintertime "it is stuck in there with all the stone and freezes and expands, starts moving, and roads start cracking." He also described the entire process for a project, from obtaining bids and awarding contracts to making payments.

{¶ 21} Additionally, Schulz testified that the road and causeway projects undertaken during the period from 2010 through 2018 were "done in accordance with the recommendations of the consultants that the road commission * * * retained."

9.

{¶ 22} On cross-examination, Schulz explained the process for installing a new pavement section, which included removing the existing road, putting in a drainage system, and constructing a new road.

{¶ 23} JIPOA's last witness was Karen Gannon, a resident of Johnson's Island, who has held various offices in JIPOA, including trustee, president, and most recently, secretary. She explained the process by which JIPOA invoices property owners for their share of the road work, which includes the cost for printing, mailing and using an accounting firm.

{¶ 24} Gannon testified that appellants and thirteen others have not paid for road work, so JIPOA has had to pay the amounts owed by these property owners to the road commission. She also testified that the invoices sent to appellants are not based upon the operating agreement, but on the common law understanding that, as property owners, "it is fair to pay our share of the repair and maintenance of our island roads and causeway." She acknowledged the amount billed to appellants is the same amount billed to JIPOA by the road commission.

{¶ 25} Kelty, Schulz, and Gannon also testified that they have seen appellants on island roads other than those providing access to and from appellants' property.

{¶ 26} On the second day of trial, appellants requested a directed verdict. The court reserved its ruling and Betty Cianciola was called to testify. She stated when she and her husband purchased their property 31 years ago, the roads were gravel, which were not difficult to drive on. She detailed her route to and from her property, "[f]rom

10.

Bayshore down Gaydos over the causeway and down Memorial Shoreway," and she has no use for Confederate Drive or other Bayhaven roads unless she is visiting friends.

{¶ 27} Mrs. Cianciola explained that prior to the road commission, JIPOA performed the road repair and maintenance and the roads were "fine." She stated that she and her husband were members of JIPOA until 2008, and during the period at issue here, she did not have advance notice of road work done on the island. She asserted that she and her husband have not paid for any road construction projects because "[t]hey are using the operating agreement," but she would pay if it was based on common law. She disclosed that she was not able to look at the road commission website when she tried. When it was discussed that appellants' share would actually be larger if the total share was apportioned based upon number of lots, Mrs. Cianciola did not disagree.

{¶ 28} Anthony Cianciola testified, and his testimony was similar to his wife's. He agreed he had an obligation to contribute to "reasonable repair and maintenance costs" and would "be willing to pay" if his cost was based on common law. He acknowledged that the road in front of his and his wife's house had been rebuilt by the road commission.

{¶ 29} On May 4, 2020, the trial court issued its decision and judgment entry making the following findings.

> In the present case, the Court finds that the [appellants] have an
> easement to use the roads and causeway on Johnson's Island and that
> easement grantees, including [appellants], have a common law obligation to

11.

contribute to the maintenance and repair of those easements. The Court finds that the Road Commissions [sic] has undertaken only the appropriate and necessary repairs and maintenance on those roads and causeway. The Court finds the Operating Agreement to be enforceable and further finds that the "proportionate share" is properly defined as an equal share (1/300) for each property owner on Johnson's Island. The Court finds that [appellants] have been unjustly enriched by filing [sic] to pay the invoices from JIPOA for the repairs and maintenance from 2010 – 2018.

{¶ 30} The court awarded JIPOA $3,109 less $150 already paid, denied appellants' motion for a directed verdict, and dismissed appellants' counterclaim. Appellants timely appealed this decision.

### Arguments

{¶ 31} The parties agree that appellants have a common law obligation to pay a reasonable cost for the repair and maintenance of some island roads. However, the parties disagree significantly on the amount and how it is to be calculated.

{¶ 32} Appellants contend they are required to pay an amount for the maintenance and repair of the roadways they actually use leading to their home. However, appellants argue the amount sought by JIPOA and awarded by the trial court includes an amount for roadways they do not use, administrative costs for JIPOA and the road commission, entities to which they do not belong, and the cost of upgrades and replacement projects initiated by the road commission that go beyond their common law obligation.

12.

**{¶ 33}** Appellants direct our attention to *Koch v. J & J Ranch, LLC.*, 2013 WY 51, 299 P.3d 689, wherein one easement holder improved a common roadway and asked his neighbor, who also held an easement over the roadway, to contribute to the cost. In determining whether the defendant neighbor should contribute to the cost, the court looked at the following factors:

> (1) the amount and intensity of each party's actual use of the road and the benefits they derive from that use; (2) whether a party had notice of and an opportunity to participate in repair and maintenance decisions; (3) whether the work consisted of reasonable and necessary repairs and maintenance, rather than improvements to the road; (4) whether the quality and price of the work was reasonable; and (5) the value of other monetary or in-kind contributions to repair and maintenance made by the parties. *Id.*, at ¶ 21, citing *Rageth v. Sidon Irrigation District*, 2011 WY 121, 258 P.3d 712, ¶ 22 and *Freeman v. Sorchych*, 226 Ariz. 242, 245 P.3d 927, 935-36 (App.2011).

**{¶ 34}** Appellants contend that application of these factors leads to the conclusion that they had no duty to pay for much of the road work completed by the road commission. They argue: (1) they only use Memorial Shoreway Drive and the causeway, with the exception of incidental use of the other roads and thus they derive no real benefit from the repair and maintenance of the other roads; (2) they receive no notice or information regarding the roadwork and have no opportunity to participate in the road

13.

repair and maintenance decisions; and (3) the majority of the projects undertaken by the road commission went beyond necessary repair and maintenance and included completely removing, rebuilding and replacing those roads. Appellants do not object to the quality and price of the road work.

{¶ 35} As additional support for their argument that all of the work performed was not necessary repair and maintenance, appellants point to language in documents from JIPOA and the road commission referencing road and drainage improvements "in addition to normal maintenance," the building of new roads, and a report entitled "Roadway Evaluation and Upgrade Program" which includes the development of "a recommended long term roadway upgrade program" as well as scheduled road maintenance and needed repairs. They cite to cases distinguishing between maintenance and upgrades, including *Wiebelt v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 93AP-117, 1993 WL 238846 (June 24, 1993) (Ohio Department of Transportation's duty to maintain state highways involves only the duty to preserve the existing highways, not to initiate substantial improvements) and *Whitehair v. Stiers*, 5th Dist. Guernsey No. 15-CA-18, 2016-Ohio-348 (court determined using gravel to replenish pathway was an improvement, not a repair, based on the language of the right of way).

{¶ 36} Appellants further assert that JIPOA cannot establish a claim of unjust enrichment as appellants derive no benefit from the repair of the majority of the roads on the island, and JIPOA was obligated by the operating agreement to make the repairs and

14.

incur the cost, and that any benefit to appellants was merely incidental to JIPOA's duty under the operating agreement.

{¶ 37} Lastly, in their second assignment of error, appellants assert that the trial court's finding that the operating agreement was enforceable and its award of the full amount of the annual road maintenance assessments determined by the road commission are contrary to prior decisions of this court and the trial court itself, and therefore violate the doctrines of res judicata and stare decisis.

{¶ 38} JIPOA counters the road commission, as created by the operating agreement, merely provides the structure for determining how to manage the repair and maintenance of the roads when there are 300 easement holders, and the assessments are not an attempt to enforce the operating agreement. As additional evidence that it is not seeking to enforce the operating agreement, JIPOA points out that the operating agreement provides for charging interest against the nonpaying property owners, filing property liens, and for the collection of costs and attorney fees, all of which JIPOA has not attempted. JIPOA further argues its claims are based upon appellants' common law obligation to pay a portion of the cost of maintaining the easement, and the evidence presented established the reasonableness and necessity of the repairs and maintenance performed by the road commission.

{¶ 39} With respect to appellants' reliance on the test set forth in *Koch*, JIPOA distinguishes *Koch,* where only two easement owners were involved, from the present case involving approximately 300 easement holders, and cites to *Lake Lookover Property*

15.

*Owner's Assn v. Olsen*, 348 N.J.Super. 53, 791 A.2d 270 (2002) as a more applicable case.

{¶ 40} *Lake Lookover* involved an attempt by a property owners' association, which owned a lake and connected beaches as well as a dam on the lake, to levy assessments on owners of property surrounding the lake after the association entered into a consent judgment with the New Jersey Department of Environmental Protection, and another entity. The court found the owners of the surrounding property, who had easements to use the lake, were responsible for the cost of repairing the dam.

{¶ 41} Additionally, JIPOA argues that the factors set forth in *Koch* do not support appellant's position. First, JIPOA contends it would be impossible to determine the individual usage, per year, of each of the 300 property owners. Second, JIPOA asserts that appellants were provided the opportunity to attend road commission meetings, or meetings held by JIPOA, at which both the road projects and assessments were discussed, and JIPOA points out that appellants did not otherwise attempt to communicate with the road commission or JIPOA regarding their concerns. With respect to the reasonableness and necessity of the repairs, JIPOA cites to testimony from the engineering experts.

{¶ 42} In response to JIPOA's argument, appellants take issue with the inclusion of the organizations' administrative expenses, citing to *Sandy Beach Apt. Ltd. v. Mitiwanga Park Company*, 6th Dist. Erie Nos. E-06-041, E-06-040, and E-06-042, 2008-Ohio-606 as support for their argument that "an association has no authority to charge administrative costs to nonmembers."

16.

{¶ 43} Appellants also contend there are only 14 property owners out of the approximately 300 owners who do not pay the annual road assessments, and with such a small number, it would not be that difficult to determine what roads appellants actually use, or what costs are associated with the roads that appellants use. Additionally, appellants insist that any attempt on their part to attend a meeting would have been fruitless and they made their opposition known by refusing to sign the operating agreement and by bringing suit against JIPOA to ensure the operating agreement was not enforced against them.

{¶ 44} Appellants also distinguish *Lake Lookover* from the present case as in that case, the dam was found to be unsafe and the state of New Jersey had issued directives to the owner to repair and reconstruct the dam. Lastly, appellants reiterate their argument that in awarding the assessment amount, the trial court was making an award based upon the operating agreement. Appellants maintain the operating agreement established the road commission and provided authority for JIPOA to levy assessments against non-members.

## Standard of Review

{¶ 45} Appellants argue that the standard of review is de novo as the trial court's order is based upon an "erroneous standard or a misconstruction of the law." JIPOA, on the other hand, argues that the trial court's allocation of costs based upon unjust enrichment is subject to an abuse of discretion standard.

17.

**{¶ 46}** With respect to questions of law, including questions of law with respect to JIPOA's declaratory judgment action, we agree with appellants that the appropriate standard of review is de novo. *Buehrer v. Meyers*, 2020-Ohio-3207, 155 N.E.3d 222, ¶ 12-13 (6th Dist.), citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13 and *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4.

**{¶ 47}** We disagree with appellants' broader claim that this entire appeal is to be reviewed using a de novo standard. The parties agree that appellants are easement holders and as easement holders, are responsible for a portion of the necessary maintenance and repair of roads upon which they have an easement. The trial court also found this to be the applicable law. Further, both parties rely on Restatement of the Law Third, Property (Servitudes), Section 4.13(4) (2000) as support for this duty. However, the parties disagree over what costs appellants are responsible for under this law. With respect to these issues, we do not find that de novo is the appropriate standard of review.

**{¶ 48}** JIPOA argues that an abuse of discretion standard applies as the trial court was exercising its equitable jurisdiction. A trial court's exercise of its equity jurisdiction is reviewed for an abuse of discretion. *KeyBank, N.A. v. MRN Ltd. Partnership*, 193 Ohio App.3d 424, 2011-Ohio-1934, 952 N.E.2d 532, ¶ 44 (8th Dist.), citing *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274 - 275, 473 N.E.2d 798 (1984).

**{¶ 49}** Here, the trial court awarded JIPOA damages based upon the equitable doctrine of unjust enrichment, and thus, we find abuse of discretion to be the appropriate

18.

standard of review.  Under this standard, we consider whether the trial court's decision was "arbitrary, unreasonable, or unconscionable."  *Sandusky Properties* at 275.

**Law and Analysis**

{¶ 50} Generally, "'[a]n easement is the interest in the land of another, created by prescription or express or implied grant, that entitles the owners of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate.'  (Citations omitted.)"  *Shikner v. Stewart*, 6th Dist. Ottawa No. OT-09-015, 2010-Ohio-1478, ¶ 24, quoting *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App.3d 57, 66, 740 N.E.2d 328 (4th Dist.2000).  Under the common law, an owner of an easement is obligated to perform reasonable repairs and maintenance when necessary.  *Cianciola 2*, 6th Dist. Ottawa No. OT-17-027, 2018-Ohio-2037, at ¶ 17; *National Exchange Bank v. Cunningham*, 46 Ohio St. 575, 589, 22 N.E. 924(1889) ("The burden devolves upon the owner of the dominant estate of making whatever repairs are necessary for his use of the easement.").

{¶ 51} In cases, such as this one, where there are multiple easement owners, Restatement of the Law Third, Property (Servitudes), Section 4.13(4) states that "holders of separate easements * * * who use the same improvements or portion of the servient estate in the enjoyment of their servitudes have a duty to each other to contribute to the reasonable costs of repair and maintenance of the improvements or portion of the servient estate."  Comment e to this section further explains, in relevant part, that "[n]o affirmative duty to initiate repair is imposed by this section, but once repair or

19.

maintenance is reasonably undertaken by one or more of the servitude beneficiaries, the others have a duty to contribute to the reasonable costs. The responsibility of each user should reflect a fair proportion of the costs. The basis of fair apportionment will vary depending on the circumstances."

{¶ 52} While appellants acknowledge they have an easement over the roads on Johnson's Island that provide them direct access to their home, specifically the causeway and Memorial Shoreway Drive, and thus, have a duty to pay their fair share of the cost to repair and maintain those roads, they argue that they do not have an obligation to repair other roads on Johnson's Island. The trial court found that appellants have an easement to use all the roads on Johnson's Island. Based upon the evidence provided, we agree with this conclusion.[3]

{¶ 53} As appellants have an easement over all of the roads on Johnson's Island, they have a common law obligation to contribute to the reasonable cost to repair and maintain these roads. Appellants have argued that the amounts awarded go beyond the reasonable costs for repair and maintenance and include the costs of improvements and upgrades as well as unrelated costs such as administrative costs for both the road commission and JIPOA.

---

[3] Although not binding on appellants, as they were not parties to that action, we note this finding is consistent with the trial court's finding in *Baycliffs Homeowner's Association, Inc. v. Johnson's Island Property Owners' Assn.*, Ottawa C.P. No. 04-CVH-202 (June 7, 2007).

20.

{¶ 54} We first note the fact that the work was done by the road commission and the amount charged is equal to the amount of the assessments does not necessarily mean that these charges were attempts to enforce the operating agreement against appellants. In *Cianciola 2*, we did not find references to the operating agreement and road commission to be determinative, concluding that references to these in the complaint "merely explain[ed] the manner in which JIPOA has attempted to collect the proportionate share of road maintenance and repair expenses." *Cianciola 2* at ¶ 14. The issue is whether JIPOA's claims can be established solely based upon common law principles. *See id*. at ¶ 15.

{¶ 55} Here, JIPOA's claims stem from the doctrine of unjust enrichment and the common law duty of an easement holder to keep the easement in repair. The trial court found the road commission undertook "only the appropriate and necessary repairs and maintenance to the roads and causeway." Additionally, as the trial court awarded the entire amount requested, which included the administrative costs of JIPOA and the road commission, we conclude that the trial court found these amounts necessary costs of repairing and maintaining the roads. We do not find these conclusions to be an abuse of discretion.

{¶ 56} Appellants also contend that the trial court erred in concluding that they had been unjustly enriched, such that JIPOA was entitled to recover these amounts. The elements of an unjust enrichment claim are as follows: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and

21.

(3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hammill Mfg. Co. v. Park-Ohio Industries, Inc.*, 6th Dist. Lucas No. L-12-1121, 2013-Ohio-1476, ¶ 14, citing *L & H Leasing Co. v. Dutton*, 82 Ohio App.3d 528, 534, 612 N.E.2d 787 (3d Dist.1992). Appellants contend JIPOA has not met these requirements, and further, that any benefit to appellants was merely incidental to JIPOA discharging its own commitments as JIPOA was bound to make these payments to the road commission by the settlement agreement in *Baycliffs Homeowners' Assn v. Johnson's Island Property Owners' Assn.*, Ottawa C.P. No. 04-CHV-202 and by the operating agreement. In support, appellants cite to *Sandy Beach*, 6th Dist. Erie Nos. E-06-041 and E-06-042, 2008-Ohio-606.

{¶ 57} In *Sandy Beach*, property owners in the Mitiwanga Subdivision filed suit against the Mitiwanga Park Company ("Mitiwanga"), a company that governed and maintained the subdivision, regarding attempts by the company to enforce by-laws against the property owners. The trial court granted summary judgment to Mitiwanga on the issue of the validity and enforceability of the by-laws and also found the property owners liable under the doctrine of unjust enrichment from disavowing the by-laws and assessments imposed by Mitiwanga under the theory that the property owners had derived a benefit from the use of the common areas.

{¶ 58} On appeal, we concluded the by-laws were not restrictive covenants and therefore not binding on the property owners. In so concluding, we stated "there is no statutory or common law principle that requires the subdivision lot owners to become a

22.

member of Mitiwanga and share in the cost of the maintenance of the common areas." *Id*. at ¶ 38. Additionally, we concluded the trial court erred in finding that the property owners were liable for the upkeep of the common areas based upon unjust enrichment. We reasoned that "where a party does not agree to sharing the costs of maintaining the common areas, there is no basis for making them pay for such maintenance that was done." *Id*. at ¶ 43.

{¶ 59} We find *Sandy Beach* to be distinguishable with regard to JIPOA's unjust enrichment claim for a number of reasons. In *Sandy Beach*, we found relevant to the equitable analysis the fact that "Mitiwanga told [some of the defendant property owners] that they were not entitled to use the common areas." More importantly, since *Sandy Beach*, we have acknowledged that there is a "common law obligation of an owner of an easement to perform reasonable repairs and maintenance when necessary." *Cianciola 2* at ¶ 17. Unlike this case, in *Sandy Beach* there was no finding that the property owners had an easement to use the common areas. *See Sandy Beach* at ¶ 45-46.

{¶ 60} After reviewing the parties' arguments and the evidence set forth, we do not find that the trial court's finding of unjust enrichment was an abuse of discretion.

{¶ 61} In their second assignment of error, appellants argue the trial court's decision failed to follow the doctrines of res judicata and stare decisis. Specifically, appellants allege that the trial court's decision was contrary to prior decisions of both the trial court and this court that the operating agreement was not binding on appellants. Appellants reference the trial court's language finding the operating agreement to be

23.

enforceable. While the court's statement does not specifically state it is enforceable *against appellants*, this language is troubling and in violation of the prior court orders.

{¶ 62} "Under App.R. 12(A)(1)(a) and (B), we have the authority to 'affirm, modify, or reverse' trial court judgments, which encompasses the ability to 'render the judgment the trial court should have entered.'" *Quest Workforce Sols., LLC v. Job1USA, Inc.*, 6th Dist. No. L-17-1194, 2018-Ohio-3304, 119 N.E.3d 817, ¶ 23, quoting *Bell v. Turner*, 4th Dist. Highland Nos. 12CA14 and 12CA15, 2013-Ohio-1323, ¶ 20. Therefore, pursuant to App.R. 12, we strike the language in the decision and judgment entry finding the operating agreement to be enforceable.

{¶ 63} However, we find that the trial court's judgment is supportable without this language. It appears that the trial court's statement was limited to the definition of "proportionate share," as in both places where the enforceability of the operating agreement is discussed, it is in a sentence with the finding that the "proportionate share" is defined as "an equal share (1/300) for each property owner on Johnson's Island." The conclusion that a "proportionate share" is equivalent to an equal share for each property owner on Johnson's Island, without consideration of amount of lots, or size of lots, is supported by the evidence and can be reached without consideration of the operating agreement.

{¶ 64} Comment e to Restatement of the Law Third, Property (Servitudes), Section 4.13(4) states that "[t]he basis of fair apportionment will vary depending on the circumstances." There is testimony in the record that different ways of apportionment

24.

had been considered and it was concluded that the use of the roads would not be significantly different based upon the size or amount of lots, or the value of a property, and that it was equitable to apportion the cost on a per owner basis. There was additionally evidence put forth at trial that the appellants, as owners of two and one-half lots on Johnson's Island, benefit from the per owner apportionment and would actually pay a larger percentage if "proportionate share" was based upon amount of lots owned. While we recognize that appellant has suggested that the costs should be apportioned based on usage of the roads, after considering the evidence and the specific facts of this case, we find it equitable to define "proportionate share" as an equal share (1/300) for each Johnson's Island property owner.

{¶ 65} Appellants further argue that the trial court's determination that appellants' proportionate share is the same as the annual assessment is similarly problematic. Appellants assert the assessment amounts are based upon the operating agreement and are not consistent with the common law duty to pay for repair and maintenance expenses. For the reasons we have set forth above, we do not find this argument persuasive.

**{¶ 66} Conclusion**

{¶ 67} Having carefully considered the record and the parties' arguments, we find appellants' first assignment of error not well-taken, and appellants' second assignment of error well-taken, in part. Accordingly, the following language is stricken from the trial court's judgment entry. In the second paragraph on page three of the trial court's judgment, we strike "finds the Operating Agreement to be enforceable and further." On

25.

page four of the court's opinion, we strike "that the Operating Agreement is enforceable and." We affirm the remainder of the judgment of the Ottawa County Court of Common Pleas. Pursuant to App.R. 24, appellants are hereby ordered to pay the costs incurred on appeal.

Judgment affirmed<br>and modified.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.